**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.  0:14-cv-60581-JIC**

CARMEN REANO and
SANTIAGO REANO,

        Plaintiffs,

vs.

WELLS FARGO BANK, N.A. d/b/a AMERICA'S
SERVICING COMPANY,

        Defendant.

_____/

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

Pursuant to Local Rule 7.1, Defendant, Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") responds in opposition to the second Motion for Leave to File Second Amended Complaint ("Motion to Amend") filed by Plaintiffs, Carmen Reano and Santiago Reano ("Plaintiffs") (DE 93).  In support thereof, Wells Fargo states:

**I.**      **FACTUAL BACKGROUND**

This action arises out of a foreclosure action filed by US Bank, as Trustee, on March 16, 2010 – over **<u>seven</u>** years ago – as a result of Plaintiffs' failure to timely make four consecutive monthly payments on a mortgage and note ("the State Court Action"), serviced by Wells Fargo. *See generally* DE 93.  Originally alleging only one state law claim for negligence, the case was filed only a few days after Plaintiffs filed their March 3, 2014 appeal of the final judgment of foreclosure entered in the State Court Action on February 4.  The basis for the appeal was largely the same as the basis for this original action, i.e., Wells Fargo's alleged failure to properly credit the payment that Plaintiffs made on March 8, 2010.  These were also the same grounds asserted

in Plaintiffs' Qualified Written Request/Notice of Error letter pursuant to RESPA (hereinafter "First QWR"), sent to Wells Fargo seven days after the entry of the final judgment, on February 11, 2014.  DE 93-23; 93-3.

Plaintiffs did not wait until the appeal concluded, or even until receiving a response to the QWR before bringing this action.  Plaintiffs even opposed a stay of this action to await the outcome of the appeal.  DE 42.  Essentially, Plaintiffs filed this action as a placeholder, while they were in the process of manufacturing a claim under RESPA.  Further, despite claiming in the QWR that Wells Fargo should correct its "error" and credit the payment to Plaintiffs' account, Plaintiffs already knew and acknowledged in their post-trial pleadings in the State Court, that their payments had been applied on June 9, 2013.  DE 39, pg. 9, Ex. C, ¶¶15-16.

On April 24, 2014, Wells Fargo, through counsel, provided its response to the QWR after a full and complete investigation of the matter.  DE 93-3, pgs. 5-6.  On May 9, 2014, Wells Fargo also provided a supplemental response with documentation showing that outstanding fees were owed at the time the payment was received by Wells Fargo.  Although Plaintiffs have conveniently eliminated any mention of this supplemental response in any of their pleadings, a copy is attached hereto as Exhibit "A".

As the response letter indicates, to avoid foreclosure, Ms. Reano had until January 19, 2010 to bring the loan current, and there is no dispute that payments sufficient to bring the loan current were not made by that date, nor were certified funds tendered as required.  DE 93-3.  Further, even if the payment had been applied on March 8, 2010, and not held in suspense as permitted by Section 1 of the mortgage, the amount tendered was insufficient to bring the loan current as fees and costs relating to the default had already been incurred.  *Id.*; *see also* Ex. A.  Likewise, the reinstatement provisions in Section 19 require the payment of fees and costs

incurred in enforcing the loan terms after default.  Therefore, Wells Fargo's response letter stated that in accordance with its investigation and the State Court's rulings at the time, it was unable to make any adjustments or changes to the account.  *Id.*

### The Amended Complaint

After Wells Fargo moved to dismiss the first Complaint, or in the alternative, to stay the action, pending the outcome of the State Court appeal, Plaintiffs then filed an Amended Complaint alleging five Counts for: negligence based on RESPA and Regulation X; RESPA Violations; Conversion; negligence after the implementation of Regulation X;  and declaratory relief based upon Wells Fargo not being entitled to retain the borrowers' payment without crediting it to their account.   DE 21.  Wells Fargo filed its Motion to Dismiss, asserting that the claims were barred by *res judicata* and collateral estoppel, and factually and legally insufficient. DE 39.   Additionally, Wells Fargo moved alternatively for dismissal or stay of the action pursuant to the *Colorado-River* doctrine.  *Id.* On May 12, 2015, this Court entered an Order staying the action until the state appellate proceedings were terminated.  DE 62.

### The Revised And Amended Proposed Second Amended Complaint

After the state appellate court issued its opinion reversing the Final Judgment, Plaintiffs filed their Motion seeking to reopen this case, and on February 23, 2017, filed a Motion seeking leave to file their Second Amended Complaint ("First SAC"). DE 79.  Once again Plaintiffs' claims evolved into an entirely new set of claims – this time on behalf of a putative class of borrowers, and also to assert "malicious prosecution" because of the appellate court ruling. Specifically, the First SAC sought to include four claims for Negligence, RESPA, Conversion and Malicious Prosecution and two class claims for Unjust Enrichment and Declaratory Relief. But after Wells Fargo filed its opposition to the proposed SAC on futility grounds, Plaintiffs withdrew their Motion seeking leave to amend.  *See* DE 88.   The Court entered its Order

requiring Wells Fargo to respond to the Amended Complaint (DE 89) and Wells Fargo filed its Amended and Renewed Motion to Dismiss on April 24, 2017.  (DE 95).  While Wells Fargo was in the process of finalizing that motion for filing, Plaintiffs filed the instant motion seeking to file yet another Second Amended Complaint, hours before Wells Fargo's motion was filed. (DE 93).

Plaintiffs have now abandoned the class action claims, but again allege violations of RESPA in two separate counts, a malicious prosecution claim, and now another new claim for FCCPA violations.  The claims are again based upon the alleged failure to credit Plaintiffs' March 2010 payment appropriately and corresponding errors in responding to the first two QWRs –dated February 11, 2014 and December 16, 2015.  *See* DE 93-1, ¶23,¶25; DE 93-2; DE 93-3.  Plaintiffs have also added claims pertaining to a third QWR sent in December 2016, concerning the collectible amounts after dismissal of the foreclosure action.  DE 93, ¶¶27-28; DE 93-4; DE 93-5.  Notwithstanding the claims in this action, on March 6, 2017, Plaintiffs also filed a state court action contesting the amounts now due and owing on the mortgage loan.  (A copy of the state court complaint is attached hereto as Exhibit "B").  Wells Fargo's motion to dismiss that Complaint is pending.

To summarize, in this action alone, Plaintiffs are now on their *fourth* attempt to allege claims and Wells Fargo has already invested substantial time and cost in responding to Plaintiffs' moving target of allegations and claims.

**The RESPA Claims**

With respect to the first RESPA claim in Count One, Plaintiffs contend that Wells Fargo failed to comply with its obligations under the statute in responding to the first two QWRs – both of which were sent after the final judgment was entered in February 2014 and before the appellate court's reversal of the judgment.  DE 93, ¶32.  Plaintiffs contend that "as a matter of

law, an error did occur" because of the appellate court's conclusion that Wells Fargo was not entitled to pursue foreclosure after the March 2010 payment was tendered. *Id.*, ¶33. Further, Plaintiffs contend that Wells Fargo's motion seeking to reopen the evidence in the trial court, after the reversal of the foreclosure judgment was in error. *Id.*, ¶34.

As to the second RESPA claim in Count Two, Plaintiffs assert errors based upon a November 16, 2016 mortgage statement they received and the third QWR they sent in December 2016. The QWR asserted that certain late charges, escrow charges and other amounts on the statement were improperly included as a result of the reversal of the foreclosure judgment. DE 93-4. After its investigation, Wells Fargo timely responded by letter dated February 1, 2017, acknowledging that the judgment was vacated, but clarifying that the appellate court's opinion did not hold that any fees and charges were improperly imposed or that certain amounts were not in fact outstanding and overdue. DE 93-5.

However, to account for the five-year statute of limitations applicable to breach of contract actions under Florida law, Wells Fargo had already made significant adjustments to Plaintiffs' loan, as they acknowledged in their First SAC. DE 79, ¶¶39. The late charge and corporate advance balances were reduced to $0.00 and the reduction of the total unpaid payments to a balance of $33,739.62 (reduced from $51,738.76), with the due date advanced to August 1, 2012. DE 93-5. In other words, despite making no payments on their account since March 2010, Plaintiffs were credited for approximately 28 monthly payments and all late charges were removed from the account. *Id.* Plaintiffs now claim that an April 2017 statement failed to make the promised corrections because the escrow balance (amounts advanced by Wells Fargo to pay Plaintiff's property taxes) is not at zero. DE 93-1, ¶39.

111496751.2

### The FCCPA Claim

The FCCPA claim in Count Three alleges violations of the statute in Wells Fargo's filing of the motion to reopen the evidence in the State Court after the final judgment was reversed without a directive by the appellate court to dismiss the state foreclosure case.  *Id.*, ¶¶47-48. The claim also alleges "Wells Fargo's continued effort to collect the escrow charges … after agreeing to remove those charges" and the recent "assessment of attorneys' fee charges ...."  *Id.*

### The Malicious Prosecution Claim

In support of this claim, Plaintiffs allege that Wells Fargo caused the wrongful foreclosure action to be filed, and that after the appellate proceedings were resolved in Plaintiffs' favor, it attempted to continue the foreclosure with knowledge that it did not have a valid basis to do so.  DE 93-1.

As set forth more fully below, Plaintiffs' Motion to Amend should be denied in its entirety.  However, should the Court permit the filing of any of the claims in the proposed SAC, Wells Fargo requests that it be permitted to raise these arguments in a motion to dismiss.

## II.   ARGUMENT

### A.   Legal Standard

Pursuant to Fed. R. Civ. P. Rule 15(a), if a party has already amended once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. Rule 15(a).   Leave to amend should not be granted where amendment would be futile. *See, e.g., Cooksey v. Waters*, 435 Fed. Appx. 881, 884 (11th Cir. 2011).   As explained by the Eleventh Circuit, "[l]eave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999) ("denial of leave to amend

is justified by futility when the complaint as amended is still subject to dismissal"). Because Plaintiffs' proposed claims would still be subject to dismissal and/or immediately subject to summary judgment in Wells Fargo's favor, amendment would be futile and should be denied.

### B.    Plaintiffs' Failure To Allege Compliance With Conditions Precedent

Each of the claims in the proposed SAC fails because of Plaintiffs' failure to comply with the requirements of the mortgage.  Section 20 of Plaintiffs' mortgage loan agreement provides in relevant part:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

*See* DE 39-4 (Mortgage), ¶20.  This notice is required to be in writing and given at the address shown in the mortgage or at another designated address.  *Id.*  Notice is not deemed to have been given until actually received by the lender.  *Id.*  As held by this Court, the notice and cure provision of a mortgage bars a plaintiff's claims where it "applies by its terms to [the] action." *St. Breux v. U.S. Bank, Nat. Ass'n,* 919 F. Supp. 2d 1371 (S.D. Fla. 2013).

In *Charles v. Deutsche Bank Nat'l Trust Co.*, this Court dismissed claims against a mortgage servicer based upon the borrower's failure to allege compliance with the notice and cure provisions required by paragraph 20 of the subject mortgage.   2016 WL 950968 (S.D. Fla. Mar. 14, 2016).   After a foreclosure action was filed, the plaintiff sent an RFI to defendant-servicer SPS regarding charges for inspection reports.   Dissatisfied with the information received, the borrower sent a follow-up request.  *Id.* at *1.  After not receiving the documentation requested, the plaintiff filed a federal action alleging *inter alia*, violations of RESPA by failing to

7

provide an adequate response to the RFI. *Id.* The Court held that the disputed fees were for property inspections conducted pursuant to the mortgage, and thus arose out of the mortgage. *Id.* at \*2. The court also specifically considered and held, that as the servicer, SPS could enforce the pre-suit notice and cure provisions of the mortgage and as such, the claims were barred. *Id.*

Similarly, in *Hill v. Nationstar Mortgage LLC*, 2015 WL 4478061, at \*3 (S.D. Fla. July 2, 2015), this Court dismissed similar claims against a servicer, holding that "regardless of the cause of actions alleged", claims related to inflated property inspection fees were entirely based on the borrowers' mortgage contracts; thus the homeowners were required to comply with notice and cure provision. *Id.* More recently, in *Sandoval v. Wolfe*, this Court dismissed claims against a mortgagee, based upon the borrower's failure to allege compliance with paragraph 20 of the subject mortgage. Plaintiff's claims alleged violations of RESPA, FDCPA, and FCCPA, and arose out of a disputed $250 fee for a motion filed in the underlying mortgage foreclosure action, and the allegedly excessive service of process charges incurred in the foreclosure and reflected in the judgment. In dismissing these claims, the court held:

> All of these claims arise out of the mortgage, Plaintiff's efforts to reinstate the mortgage, and Plaintiff seeking information about reinstating the mortgage, as the terms and duties under the mortgage and note are what provide the basis for Suntrust to charge to and recover these fees from Plaintiff.

*Sandoval v. Wolfe*, No. 16-61856-CIV, 2017 WL 244111, at \*3 (S.D. Fla. Jan. 19, 2017). *See also Sotomayor v. Deutsche Bank Nat'l Trust Co.*, No. 0:15-CV-61972-WPD, 2016 WL 3163074, at \*2 (S.D. Fla. Feb. 5, 2016) (dismissing plaintiffs' TILA, FDCPA, and FCCPA claims for plaintiffs' failure to comply with paragraph 20 of mortgage contract).

Here, the Mortgage expressly defines the loan servicer as the agent of the lender with rights under the terms of the Mortgage. *See* DE 39-4, ¶20. Plaintiffs' claims arise out of the alleged improper failure to credit a mortgage payment, insufficient responses to QWRs seeking

information about the payment, purported attempts to collect improper fees and charges imposed, and the improper filing of the foreclosure action.  *See generally* DE 93-1.  These claims plainly relate to the mortgage.  Yet, Plaintiffs have preemptively argued that these provisions do not apply because there are no allegations that Wells Fargo is an "agent" of the lender, and it is an entirely "separate and distinct entity."  DE 93, pgs. 3-5.  This argument is simply unintelligible. Absent allegations that Plaintiffs complied with Section 20 of the mortgage – or even complied with all applicable conditions precedent – the entire proposed SAC is facially invalid. *See, e.g., Sandoval*, 2017 WL 244111; *Hill*, 2015 WL 4478061.

Importantly, Plaintiffs cannot fix this fatal defect by making any such allegations or by actual compliance.  The alleged "failure to credit" that the proposed claims are partially based upon, was already corrected by the time Plaintiffs initially filed this action on March 6, 2014.  As they acknowledged, the payment was credited to their account in June 2013.  Likewise, the foreclosure action judgment has already been reversed, and the motion to reopen the evidence denied.  And, the purported error in not reducing the escrow charge to zero, was not promised in the February 1, 2017 response letter, as Plaintiffs erroneously contend.  *See* DE 93-5.  Thus, any notice to Wells Fargo that it failed to credit the account in March 2010, or failed to reduce the escrow balance to zero as promised would serve no purpose.  *See Pierson v. Ocwen Loan Servicing, LLC*, No. 16-CV-62840, 2017 WL 634164, at \*2 (S.D. Fla. Feb. 16, 2017) (defendant-servicer cured any alleged failure to timely respond to RFI in violation of RESPA by acknowledging receipt of Notice of Error alleging purported failure, in accordance with pre-suit notice-and-cure mortgage provision).

For this reason alone, the Court should not permit the proposed Second Amended Complaint to proceed and should dismiss the case with prejudice.

C.      **The Claims Fail For Additional Reasons**

Even if the failure to comply with the mandatory pre-suit requirements does not bar the proposed claims (it does), each of the individual claims fails for additional reasons.

1.      **RESPA Violations (Counts One)**

In Count One alleging violations of RESPA, Plaintiffs once again allege that Wells Fargo failed to comply with its obligations under 12 C.F.R. §1024.35(e) because Wells Fargo failed to comply with its obligations under the statute in responding to the first two QWRs – both of which were sent after the final judgment was entered in February 2014 and before the appellate court's reversal of the judgment.  DE 93, ¶32.  Plaintiffs contend that "as a matter of law, an error did occur" because of the appellate court's conclusion that Wells Fargo was not entitled to pursue foreclosure after the March 2010 payment was tendered.  *Id.*, ¶¶33.  Further, Plaintiffs contend that Wells Fargo's motion seeking to reopen the evidence in the trial court, after the reversal of the foreclosure judgment was in error.  *Id.*, ¶34.

Importantly, Plaintiffs have never disputed the fact that there were several fees and charges still outstanding after application of the payment.  Indeed, each of Plaintiffs' Complaints has eliminated even mentioning the second part of their first QWR which sought documentation supporting their claims, or Wells Fargo's response providing the documentation that indisputably shows outstanding fees and costs on the account.  *See* Ex. A.

In order to state a claim for relief under this section of RESPA, Plaintiffs must allege that 1) Defendant is a loan servicer; 2) Defendant received a QWR from Plaintiff; 3) the QWR relates to the servicing of the mortgage loan; 4) Defendant failed to respond adequately; and 5) Plaintiff is entitled to actual or statutory damages." *Hudgins*, 2016 WL 3636859 at *3.  Plaintiffs have not and cannot sufficiently allege a claim under this section of RESPA.

<u>First</u>, as discussed above, Plaintiffs have not sufficiently alleged facts supporting the

111496751.2

fourth element, i.e., Defendant's failure to adequately respond to the QWR.   As argued in Defendant's' motions to dismiss the previous versions of the Complaint, merely because Plaintiffs disagree with Defendant's findings at the time it conducted its investigation into the claimed error does not give rise to a claim for violations of this section of RESPA.   *See* DE 95.

In *Finster v. U.S. Bank Nat'l Ass'n*, a case based upon very similar facts, the borrowers asserted a claim for RESPA violations premised upon the servicer's alleged failure to conduct a reasonable investigation in response to their RFI.   No.  3:15-CV-1044-J-34MCR, 2017 WL 1155349 (M.D. Fla. Mar. 28, 2017), appeal docketed (11th Cir. Apr. 12, 2017).   The borrower alleged that the denial of her loan modification and the continued prosecution of the foreclosure was in error.   As with Plaintiffs here, the *Finster* plaintiff did not argue that the "letters failed to contain the requisite information."   And as with Wells Fargo's response letters here, the *Finster* court observed that the "response letters included: a finding that no error occurred, its reasons for finding no error, a statement of her right to request the documents on which U.S. Bank relied, information on how to request those documents, and a telephone number for obtaining further assistance."   *Id.* at *8. However, the borrower maintained that there was a violation of RESPA because U.S. Bank "failed to conduct a reasonable investigation" which the court concluded was "premised entirely on her disagreement with U.S. Bank's determination that no error occurred."

In granting summary judgment, the court held that regardless of any theory of liability, "mere disagreement with the outcome of a reasonable investigation does not establish a RESPA violation."   The Court also observed, "[t]he goal of RESPA is transparency and facilitation of communication, and U.S. Bank's responses provided Finster with a complete, responsive, and factually-supported explanation of what led to the denial of her loan modification."   *Id.* at *9.

Here, Wells Fargo's investigation indisputably revealed that the payment made on March

8, 2010, was not sufficient to cover the amounts due and owing on the account.  *See* DE 93-3; *see also* Ex. A.  While the appellate court reversed the final judgment of foreclosure based upon their review of limited evidence presented at trial, Plaintiffs do not explain how Wells Fargo's QWR responses sent months before this reversal – and while the final judgment of foreclosure was in effect – could have "corrected" the claimed error.  In any event, the reversal of the judgment does not change what the amounts due and owing were as reflected on the mortgage loan account.  *See id.*  And significantly, Plaintiffs do not dispute that outstanding fees and charges would have remained after application of the payment.  While an affirmance by the state appellate court would have mooted Plaintiffs' claims, the reversal based on a record limited to documents admitted into evidence at trial, rather than all of the relevant account records, does not dictate a contrary result.

Second, even if Plaintiffs had a valid basis for the claim, they cannot sufficiently allege any actual damages resulting from Wells Fargo's claimed failure to respond sufficiently to the QWR.  As Plaintiffs acknowledged in the State Court Action, the funds at issue were credited to their account on June 9, 2013, prior to the Final Judgment being entered, prior to any QWR notice being served, and prior to this action being filed.  But the entire basis for the purported RESPA violation as asserted in the QWR was the failure to credit this payment and the entry of the foreclosure judgment.  *See* DE 93-2; DE 93-3.  Therefore, any purported damages could only extend through June 9, 2013.  As this Court held recently, however, Plaintiffs cannot recover damages incurred prior to Wells Fargo's April 2014 QWR response as a matter of law.  *See Graham v. Ocwen Loan Servicing, LLC*, Case No. 16-80011-CIV-COHN/SELTZER, 2016 WL 1573177 1, *3 (S.D. Fla. Apr. 19, 2016) (holding that any expenses incurred before the loan servicer responded to a qualified written request could not be recovered, because they were not

incurred "as a result of" an inadequate response).

Likewise, any alleged damages could only have resulted from the Final Judgment of Foreclosure, not from any purported failure to investigate under RESPA.  As this Court also recently held in dismissing a RESPA claim under very similar facts:

> Plaintiffs' information request asked Nationstar to 'justify' the outstanding escrow balance when that issue had already been adjudicated against Plaintiffs and in favor of Nationstar by the State Court in 2010. It is unclear what information Nationstar could have provided Plaintiffs to 'justify' a state court final judgment.
>
> But, assuming the regulations at issue obligated Nationstar to investigate and justify the State Court's judgment (or, perhaps, simply to respond in some way to Plaintiffs' request); and taking as true Plaintiffs' allegation that Nationstar did not do so; whatever damages Plaintiffs suffered resulted directly from the State Court's Foreclosure Judgment—*not* from Nationstar's alleged inaction in violation of RESPA.

*Eveillard v. Nationstar Mortg. LLC*, No. 14-CIV-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015), *appeal dismissed* (June 4, 2015), *reconsideration denied*, No. 14-CIV-61786, 2015 WL 1191170 (S.D. Fla. Mar. 16, 2015).

Indeed, Plaintiffs have already recovered any damages that they could possibly be entitled to as a result of the final judgment being vacated.  The appellate court already entered its Order entitling Plaintiffs to their appellate fees and costs and Wells Fargo has credited Plaintiffs' mortgage loan account in amounts totaling over $20,000.00, despite no requirement to do so. *See* DE 93-5.  Accordingly, Plaintiffs cannot satisfy the requirements of RESPA and they should not be permitted to assert this claim.

### 2.    Count Two

As to the second RESPA claim, Plaintiffs assert that Wells Fargo's February 1, 2017 response to the December 2016 QWR indicated that "substantial corrections would be made" and the "corrections appeared to encompass the Reanos' original concerns relating to the March

2010 payment." DE 93-1, ¶28. However, Plaintiffs allege that they received a subsequent billing statement which erroneously included escrow charges after Wells Fargo promised to reduce the balance to $0.00. *Id.* But as the response letter at issue indicates, the corporate advance balance and unpaid late charge balance were reduced to $0.00; there was no statement in the response letter that the escrow balance would be reduced to $0.00. DE 93-5. The response letter even explained in detail the difference between the "escrow" balance and the "corporate advance balance" as requested by Plaintiffs. Therefore, the second RESPA claim cannot survive either.

### D.      The FCCPA Claim Fails For Several Reasons

In support of this claim, Plaintiffs allege that Wells Fargo violated "section 559.72(9) in three separate and distinct ways" as follows:

> (1) threats and efforts to resume the foreclosure litigation after the appellate mandate [which] involved the unlawful assertion of a non-existent right to foreclose upon the Reanos on the basis of the asserted March 2010 default; (2) continued effort to collect the escrow charges … after agreeing to remove those charges represents a knowing attempt to collect a debt that the Reanos do not owe … (3) recent … assessment of attorneys' fee charges to the Reanos account, despite the fact that Wells Fargo was unsuccessful in the default related litigation, is also an attempt to collect a debt that the Reanos do not owe.

This claim is barred by the litigation privilege, and fails to allege debt collection activity falling within the ambit of the FCCPA.

### 1.      The Claim Is Barred By The Litigation Privilege

Section 559.72(9), Florida Statutes (2010), provides in pertinent part that "In collecting consumer debts, no person shall . . . [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

To the extent Plaintiffs' claim is based upon the efforts to resume, and actual pursuit of

the motion to reopen the evidence in the foreclosure action, the FCCPA claim is plainly barred by the litigation privilege. *See Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole,* 950 So. 2d 380, 384 (Fla. 2007) (holding that litigation privilege applies specifically to FCCPA claims and stating "litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin"). *See also Trent* 618 F.Supp.2d 1356 (same).

Likewise, in *Davidson v. Capital One, N.A.*, 2014 WL 3767677, *5 (S.D.Fla. July 31, 2014), this Court dismissed an FCCPA claim which was based upon the filing of a foreclosure action, holding "[t]he filing and maintenance of a lawsuit is plainly protected by Florida's litigation privilege, and the fact Davidson alleges the foreclosure suit was meritless because it contained false allegations is not relevant to the inquiry."; *see also Miceli v. Dyck-O'Neal, Inc.*, 2016 WL 7666167, at *5 (M.D. Fla. Aug. 9, 2016) (FCCPA claim predicated on filing of deficiency action barred by litigation privilege); *Perez v. Bureaus Inv. Grp. No. II, LLC,* 2009 WL 1973476, at *3 (S.D.Fla. July 8, 2009) (dismissing FCCPA claim based on allegation defendant filed debt-collection lawsuit "after the applicable statute of limitations had lapsed").

Here, Plaintiff's allegations of FCCPA violations based upon the motion to reopen the evidence at trial after the reversal of the foreclosure judgment are plainly barred by the litigation privilege and cannot survive.

**2.      The Alleged Violations Are Not "Debt Collection Activity"**

As to the second and third part of Plaintiffs' claims based upon the escrow balance and the "attorney cost" reflected on the April 2017 mortgage statement, this too must fail.   Relying upon Florida state court decisions, this Court recently held, "sending monthly billing statements are not an attempt to collect a debt." *See Brown v. Select Portfolio Servicing, Inc.*, 2017 WL 1157253, at *3 (S.D. Fla. Mar. 24, 2017); *Vanecek v. DiscoverFinancial Services, LLC*, 2015

WL 6775633 (Fla. 17th Cir. Ct. 2015) (finding that "the monthly billing statement was not an attempt to collect a debt as a matter of law"); *Havey v. Discover Financial Services, LLC*, , 2015 WL 6965138 (Fla. 12th Cir. Ct. 2015) (finding that periodic statements "were not attempts to collect a debt in violation of the FCCPA as a matter of law").

Moreover, in light of Plaintiffs' August 2014 bankruptcy discharge, the monthly billing statements include language in bold underline at the top of the statement stating:

> **PLEASE NOTE: If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only**.

The statements further include a heading titled "Important bankruptcy notice", which also expressly disclaims the attempt to collect any debt as a result of their bankruptcy discharge, and refers to Plaintiffs' ability to make *voluntary* payments if they choose.  DE 93-5.  As the Eleventh Circuit recently stated in dismissing an FCCPA claim premised on billing statements containing almost identical language sent after a borrower's bankruptcy discharge:

> We are confident that no consumer—even the least sophisticated one—could have been misled into thinking that [the lender] was seeking to collect against her personally on the basis of the monthly statements … received.

*Helman v. Bank of Am.*, 2017 WL 1350728, at *4 (11th Cir. Apr. 12, 2017).  Because the provisions of the FCCPA only apply "[i]n collecting consumer debts", the inquiry should end there.  But even if the monthly statement could be considered a debt collection attempt, as discussed above, Wells Fargo did not indicate that it would update the escrow balance to reflect $0.00 and the mortgage unquestionably permits the recovery of property taxes paid on the borrower's behalf.  DE 39- 4, ¶3 & ¶4.

Additionally, the attorney's costs incurred – which Wells Fargo is not seeking to collect via this monthly statement – are included under the "recent activity" section, and reflect all

recent activity associated with Plaintiffs' account. The "attorney cost" line items are associated with three separate dates in February and March 2017, and were not listed on the billing statement at issue in Plaintiffs' third QWR. DE 93-5. In any event, the ability to collect specific fees and charges on the loan, is not at issue because this is not a foreclosure or collection action seeking to enforce the debt. *See, e.g., Garrison v. Caliber Home Loans, Inc.*, No. 616CV978ORL37DCI, 2017 WL 89001 (M.D. Fla. Jan. 10, 2017) (dismissing FCCPA claim alleging billing statements were attempts to collect portion of debt barred by statute of limitations and holding "the statute of limitations should be raised, if at all, as an affirmative defense to actual collection or foreclosure action.").

### E.   **Malicious Prosecution**

In support of this claim, Plaintiffs allege that Wells Fargo caused the wrongful foreclosure action to be filed, and that after the appellate proceedings were resolved in Plaintiffs' favor, it attempted to continue the foreclosure with knowledge that it did not have a valid basis to do so. DE 93, ¶61. This claim cannot survive.

The elements of malicious prosecution are: 1) the commencement of a judicial proceeding; 2) its legal causation by the present defendant against the plaintiff; 3) its bona fide termination in favor of the plaintiff; 4) the absence of probable cause for the prosecution; 5) malice; and 6) damages. *Rivernider v. Meyer*, 174 So. 3d 602, 604 (Fla. 4th DCA 2015).

Plaintiffs' allegations cannot satisfy the fourth and fifth elements because it is undeniable that a final judgment of foreclosure was entered in the lender's favor. After fighting the foreclosure action for four years, and after the State Trial Court conducted a trial where evidence was presented by both sides, the trial court Judge ruled in the lender's favor. DE 21. Plaintiffs even filed a motion for reconsideration of the judgment, which was denied. DE 21, Ex. E.

The entry of the judgment in the lender's favor alone is conclusive that probable cause

existed to file and maintain the foreclosure, notwithstanding the subsequent reversal on appeal. *See Goldstein v. Sabella*, 88 So. 2d 910 (Fla. 1956) (In absence of a showing that judgment for landlord in eviction case had been obtained by fraud, perjury or other corrupt means, judgment was conclusive on probable cause for instituting proceeding, for purpose of tenant's malicious prosecution action, even though judgment was reversed on appeal).

Importantly, as explained by the Florida Supreme Court, the conclusiveness as to the "probable cause" still exists unless there is an express finding that the reversed judgment was obtained through fraud, perjury or other corrupt means. *Id.* at 912 (subsequent reversal of judgment does not destroy validity and effect of determination probable cause "*unless ... reversed for fraud, perjury, or other corrupt means*."). There are no allegations by Plaintiffs to this effect in their proposed amended complaint nor could there be since the Fourth District made no such findings.

In *Cohen v. Amerifirst Bank*, the Third District Court of Appeal considered a malicious prosecution claim under very similar facts. In that case, after the borrower defaulted on a mortgage loan, the lender commenced foreclosure proceedings. 537 So. 2d at 1110–11 (Fla. 1st DCA 1989) *rev. denied,* 547 So. 2d 1209 (Fla. 1989). The borrower then made payments on the mortgage loan which should have brought the loan current, and even continued to make payments during the pendency of the foreclosure action. The borrower prevailed on summary judgment, then brought an action against the lender including one count for malicious prosecution. In reversing the order denying a motion for directed verdict as to the malicious prosecution count, the Third District stated that the lender:

> had an arguable right to accelerate its note and foreclose the mortgage, ***notwithstanding the fact that it had accepted payments subsequent to an admitted default and the acceleration of the amount due in accordance with the terms of the note***. To have probable cause to commence or continue an action

does not mean that the plaintiff will, or must, ultimately prevail, but only that his commencement or continuance is of an arguably valid cause of action.

The upholding of the equitable defense which prevented acceleration by its very nature admits the initial default, and right to acceleration. The fact that the mortgagor is able to present circumstances which are sufficient grounds for a trial court to not lend its equitable power to foreclose the lien of the mortgage … does not establish a lack of probable cause to institute or maintain the foreclosure proceedings after a default, in accordance with the terms of the note and mortgage.

*Cohen* 537 So. 2d at 1110–11.  Here, just as with the *Cohen* plaintiff, Plaintiffs admit – and it is undeniable – that they were in default under the terms of their mortgage loan in failing to make at least four monthly installment payments at the time they came due in November 2009, December 2010, January 2010, and February 2010.  Plaintiffs' subsequent payment of an amount they contend was sufficient to cure the default, does not change that Wells Fargo acted within its rights under the express terms of the mortgage.  Wells Fargo had the right to file suit on the note and foreclose the mortgage once Plaintiffs failed to cure the default by the date provided in the notice – January 19, 2010.  DE 39, ¶19 & ¶22.  Thus, as in *Cohen*, the circumstances simply fail to "establish a lack of probable cause to institute or maintain the foreclosure proceedings after a default, in accordance with the terms of the note and mortgage."

Likewise, the post-appellate motion seeking to present additional evidence in support of its claims in the foreclosure case, was and is legally and factually supported.  Other than Plaintiffs' unsupported and conclusory allegations that Wells Fargo "did not have a valid basis" to seek to present additional evidence, and engaged in "intentional misconduct", Plaintiffs provide no basis for their claims.  Wells Fargo's motion was supported by sound legal reasoning and analysis based upon the Fourth District's failure to expressly direct the trial court to dismiss the foreclosure case on remand.

Specifically, in *Tampa Electric Company v. Crosby*, 168 So. 2d 70 (Fla. 1964), the

Florida Supreme Court held that when an appellate court remands for further consideration without providing express direction to the trial court, the trial court "may, in his discretion, receive additional evidence." This is the precise procedure that was followed in the State Court Action here. That the state trial court decided not to exercise its discretion to permit the presentation of additional evidence does not transform a motion filed in good faith and supported by Florida law, into a basis for a malicious prosecution claim.[1]

In fact, this Court agreed that a stay of the instant action was still warranted based upon the Mandate's failure to instruct the trial court to enter judgment in favor of the borrowers. *See* DE 75 (Order Denying Plaintiff's Motion to Reopen) ("While the Fourth District Court of Appeal ("DCA") has issued its decision reversing the state court's foreclosure judgment, the decision does not conclude the state court proceedings.").

Finally, Plaintiffs' attempt to obtain their attorney's fees and costs incurred in the State Court Action through the filing of this claim, is wholly improper. Plaintiffs failed to plead their entitlement to fees and costs in the State Court Action and therefore they waived any contractual right they may have had. Thus, they were limited to appellate fees and costs.

Accordingly, there is simply no merit to the malicious prosecution claim and Plaintiffs should not be permitted to assert it in a Second Amended Complaint.

## III.   <u>CONCLUSION</u>

For all these reasons, amendment to assert a fourth Complaint would be futile and the Motion should be denied.

Dated: May 15, 2017

---

[1] A detailed analysis of the motion for new trial filed in the State Court Action may, if needed, best be left for a motion to dismiss.

111496751.2

 /s/ Kristin A. Gore___
Michael K. Winston. Esq.
Florida Bar No. 051403
mwinston@carltonfields.com
kcasazza@carltonfields.com
wpbecf@cfdom.net
Kristin A. Gore, Esq.
Florida Bar No. 059090
kgore@carltonfields.com
jmeehan@carltonfields.com
wpbecf@cfdom.net
Carlton Fields Jorden Burt, P.A.
525 Okeechobee Blvd., Suite 1200
West Palm Beach, FL 33401
Telephone: (561) 659-7070
Facsimile:  (561) 659-7368
*Counsel for Defendant, Wells Fargo Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of May, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing system:

Collette Kienle, Esq.
650 Tennis Club Drive, #105
Fort Lauderdale, FL 33311
kienlec@yahoo.com
*Co-Counsel for Plaintiffs*

Jennifer Thompson Harley, Esq.
Legal Aid Service of Broward County, Inc.
491 N. State Road 7
Plantation, FL 33317
jharley@legalaid.org
*Co-Counsel for Plaintiffs*

Jeffrey N. Golant, Esq.
Sean X. Foo, Esq.
The Law Offices of Jeffrey N. Golant, P.A.
1999 N. University Drive
Coral Springs, FL 33071
jgolant@jeffreygolantlaw.com
sfoo@jeffreygolantlaw.com
*Co-Counsel for Plaintiffs*

 /s/ Kristin A. Gore
  Kristin A. Gore

111496751.2