IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

**CARMEN REANO and**                     CASE NO.:  0:14-cv-60581-JIC
**SANTIAGO REANO**

       **Plaintiffs,**

vs.

**WELLS FARGO BANK, N.A. d/b/a AMERICA'S SERVICING COMPANY**
A Foreign Corporation.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT WELLS FARGO BANK'S MOTION TO DISMISS THE AMENDED COMPLAINT

Plaintiffs Carmen Reano and Santiago Reano hereby serve their opposition to the motion to dismiss the operative Amended Complaint filed by Wells Fargo Bank N.A. (D.E. 95). Wells Fargo's motion is directed to the Amended Complaint filed on May 23rd, 2014, nearly three years ago. (D.E. 21). On May 12th, 2015, this Court entered an order staying this case pending the conclusion of the state court appeal from the underlying foreclosure judgment. (D.E. 62). In that order, this Court noted:

> [t]he central issue underpinning Plaintiffs' claims is the same one pending before the state appellate court:
>
> Did Defendant wrongfully refuse to credit certain late payments to Plaintiffs' delinquent mortgage account, leading to a foreclosure judgment that otherwise would not have been entered? The state court's resolution of this question will significantly advance the litigation of the present case. Indeed, that decision may resolve or at least narrow the dispositive issues here, including those that Defendant raised in its Motion to Dismiss.
>
> (D.E. 62, p. 3).

1

Since then, the state appellate court has resolved the issue in Plaintiffs' favor, holding the testimony presented by Wells Fargo's corporate representative at the foreclosure trial established that Plaintiffs' March 8th, 2010 payment cured the asserted default, and there was a complete lack of any competent and substantial evidence supporting the foreclosure judgment. *Reano v. U.S. Bank, Nat. Ass'n,* 191 So. 3d 959, 961 (Fla. 4th DCA 2016).

Plaintiffs have recently sought leave to file an updated Second Amended Complaint that would not include some of the causes of action asserted in the Amended Complaint filed in 2014, but would raise different claims, including claims that are based upon events that happened after the 2014 version of the Amended Complaint was filed. (D.E. 93). Nevertheless, Wells Fargo has sought dismissal of all claims raised in the version of the complaint filed in 2014. Much of the text of Wells Fargo's motion is devoted to extraneous discussion of the other litigation involving the parties. But of course, these issues simply have no bearing on the sufficiency of Plaintiffs' Amended Complaint in this case. Defense counsel also makes improper factual representations that attempt to contradict (or drown out, Plaintiffs') allegations. To the extent that Wells Fargo attempts to articulate any legal basis for dismissal, its arguments are inapposite.

## I. THE COURT SHOULD DISREGARD DEFENSE COUNSEL'S IMPROPER FACTUAL REPRESENTATIONS

Defense counsel improperly makes the following factual contentions which attempt to either contradict or overshadow Plaintiffs' allegations and even the Fourth District's opinion in the related appeal. It is well settled that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long County,* 999 F.2d 1508, 1510 (11th Cir.1993). *See E.g. Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000). Below we summarize the most significant examples of these improper factual representations:

2

**"(1) Based upon the March 2010 filing of the foreclosure action, Wells Fargo subsequently credited Plaintiffs' mortgage loan for the approximate equivalent of 28 monthly installment payments bringing the loan due for the August 2012 monthly payment." (D.E. 95, p.1).**

Plaintiffs certainly do not allege that Wells actually credited 28 monthly payments to their account, or that the loan is now due for August 2012. To the contrary, Wells Fargo represents that it applied these credits *years after the operative Amended Complaint was filed*. Furthermore, Plaintiffs' proposed Second Amended Complaint would allege that Wells Fargo *failed* to implement the promised credits. These improper and inaccurate representations about the current status of the loan appear to be designed solely to denigrate Plaintiffs while bolstering Wells Fargo and have nothing to do with Plaintiffs' claims against Wells Fargo. Although it is unlikely to be relevant to this action, Wells Fargo's representation that the loan "due for" August 2012 is disputed both factually and legally. Significantly, the Florida Supreme Court's recent decision in *Bartram v. U.S. Bank Nat. Ass'n*, 211 So. 3d 1009, 1012 (Fla. 2016), casts serious doubt on Wells Fargo's contention that a mortgagee may attempt to collect payments that would have become due following a failed attempt by the mortgagee to pursue acceleration and foreclosure.

**"(2) Although nowhere mentioned in the Amended Complaint, days before filing this action, Plaintiffs acknowledged in the State Court Action that these same funds had already been credited to their account on June 9, 2013." (D.E. 95, p.4).**

Wells Fargo *expressly* recognizes that this particular dismissal argument finds no support in the text of the operative complaint. Nevertheless, it attempts to bind Plaintiffs to some purported factual concession based on its out-of-context characterization of papers they filed in the foreclosure litigation at the trial level. Notably, the ultimately reversed foreclosure judgment awarded the foreclosure plaintiff interest from November of 2009, and therefore does not appear

to reflect any credits in 2013. But even if Plaintiffs could be properly bound to the position that Wells Fargo attributes to them, it would obviously have done Plaintiffs little good for Wells Fargo to credit payments that caused a foreclosure in 2010, three years later. In any event, Wells Fargo's attempt to interject its factual narrative into its motion to dismiss is plainly improper, and must be disregarded.

**"(3) Ms. Reano had until January 19, 2010 to bring the loan current, and there is no dispute that payments sufficient to bring the loan current were not made by that date, nor were certified funds tendered as required.** *Id.*, **Ex. C. Further, at the time the check sent by Ms. Reano was received, the amount tendered was insufficient to bring the loan current as fees and costs relating to the default had already been incurred. Therefore, the funds were not applied to the account, as permitted by Section 1 of the mortgage, which provides, in part, that partial payments may be accepted or returned if insufficient to bring the Loan current, and that the lender is not obligated to apply such payments at the time they are accepted." (D.E. 95, p.4).**

Once again, Wells Fargo's argument goes far beyond the four corners of the Amended Complaint. Moreover, the Fourth District has conclusively rejected Wells Fargo's position on these matters; the doctrines of res judicata and law of the case will prevent it from relitigating the issue here.

**"(4) However, by the time of the filing of the proposed SAC, in order to account for the five-year statute of limitations applicable to breach of contract actions under Florida law, Wells Fargo had already made significant adjustments to Plaintiffs' loan, as they acknowledged. DE 79, ¶¶39. The late charge and corporate advance balances were reduced to $0.00 and the reduction of the total unpaid payments to a balance of $33,739.62 (reduced from $51,738.76), with the due date advanced to August 1, 2012. DE 79-5. In other words, despite making no payments on their account since March 2010, Plaintiffs were credited for approximately 28 monthly payments and all late charges were removed from the account." (D.E. 95, p. 5).**

Not only are these "facts" unsupported by the allegations of the 2014 complaint (and expressly contradicted by proposed Second Amended Complaint), but once the events described all relate to Wells Fargo's version of events that happened years after the operative complaint was filed. Employing a common rhetorical device, defense counsel attempts to vilify Plaintiffs for "making no payments since March of 2010." This argument is not only procedurally

4

improper, but logically absurd in light of the Fourth District's holding that Wells Fargo wrongfully foreclosed upon Plaintiffs after they paid what they owed. Indeed, the precise reason why Plaintiffs have not paid their mortgage since March of 2010 is solely attributable to Wells Fargo's wrongful conduct giving rise to this lawsuit.

**"(5) Indeed, Plaintiffs have already recovered any damages that they could possibly be entitled to as a result of the final judgment being vacated. The appellate court already entered its Order entitling Plaintiffs to their appellate fees and costs and Wells Fargo has already credited Plaintiffs' mortgage loan account in amounts totaling over $20,000.00 – much more than they are actually entitled to." (D.E. 95, p.14).**

Once again, Wells Fargo's argument finds no support in the First Amended Complaint, and is in direct tension with the allegations in the proposed Second Amended Complaint. Furthermore, all of its misleading and grossly improper factual representations continue to be based upon events that occurred years after the operative complaint was field. In any event, Plaintiffs have sustained direct pecuniary loss and suffered compensable emotional distress as a result of Wells Fargo's failure to adequately service their loan flagrant violation of RESPA after they invoked the error resolution procedures.

## II.  PLAINTIFFS' NEGLIGENCE CLAIMS ARE ADEQUATELY PLED

While Plaintiffs do not seek to include negligence claims in their proposed Second Amended Complaint, Wells Fargo's dismissal argument fundamentally confuses Plaintiffs' negligence per se claim, with a statutory Truth In Lending Act claim.[1]  Ironically, Wells Fargo correctly points out that the Truth In Lending Act and its implementing Regulation Z, have been construed as providing for a private right of action against creditors, but not against mortgage

---

[1] The operative Amended Compliant contains two different counts alleging negligence. The first related to Wells Fargo's acts before Plaintiffs sent their first Notice of Error. Their second relates to Wells Fargo's handling of the Notice of Error. Wells Fargo is correct that, if it had complied with RESPA, Plaintiffs' negligence claim would fail. However, as discussed in the context of Wells Fargo's dismissal argument concerning the RESPA claim, Wells Fargo's position that it complied with RESPA is meritless.

5

servicers. Thus, Plaintiffs could not bring a federal claim under these statutes. However, under Florida law, statutes and regulations that are designed to protect a particular class of persons support the duty element of a negligence claim. *See Clay Elec Cooperative v. Johnson, 873 So.2d 1182, 1185 (Fla. 2004)* citing *McCain v. Fla. Power Corp.,* 593 So.2d 500, 503 n. 2 (Fla.1992); *Florida Freight Terminals Inc. v. Cabanas*, 354 So.2d 1222, 1225 (Fla. 3d DCA 1978). Regulation Z does indeed protect borrowers and impose related duties upon mortgage servicers.

Wells Fargo cites two cases where Florida courts held that a claim against a pharmacist was subject to the medical malpractice statute of limitations—as opposed to longer statutes of limitations applying to breach of warranty and negligence claims. (D.E. 95, 8-9). But these cases are inapposite. The plaintiffs in those cases possessed medical malpractice claims, but did not assert those claims in a timely manner. Conversely, the parties here agree that Plaintiffs never possessed a Truth In Lending Act claim against Wells Fargo. Accordingly, the Truth In Lending Act's statute of limitations is irrelevant to any claims that they may be able to assert against this Defendant.

In support of its argument that Plaintiff's negligence claim was a compulsory counter-claim in the state court foreclosure, Wells Fargo cites Florida Rule of Civil Procedure 1.170, which requires a *party* to bring any claim that it has as of the time of the service of the complaint against any other *party*. Wells Fargo completely overlooks the fact that it was not a party to the state court foreclosure. Rule 1.170 does not require any party to join additional parties in order to assert a counter-claim.

Furthermore, Wells Fargo's conclusory insistence that "there is no question that the negligence claim is based upon the same transaction at issue in the foreclosure action" (D.E. 95,

p.10), overlooks the fact that the foreclosure was filed in 2010, but the relevant portion of Regulation Z was not enacted until 2011.

Confusingly, Wells Fargo also argues that Plaintiffs' first negligence claim seeks retroactive application of the 2011 amendments to Regulation Z. But Wells Fargo is mistaken. Once the relevant Regulation Z provisions were enacted, Wells Fargo was forbidden from holding Plaintiffs' funds in suspense. Nevertheless, Wells Fargo here admits that it continued do to hold these payments in suspense for at least two years after this prohibition was enacted. Wells Fargo claims only that it stopped holding Plaintiffs' March 2010 payment in suspense (in violation of Regulation Z) in 2013. Even under Wells Fargo's preferred timeline, it is clear that Wells Fargo violated the regulation's requirements long after they took effect.

Contrary to Wells Fargo's contention that Plaintiffs' first negligence claim was a compulsory counter-claim, the Fourth District has noted that "[t]he bulk of authority on the issue holds that actions to collect debts are not compulsory counterclaims to actions predicated on the violation of consumer protection type laws." *See Equity Residential Properties Trust v. Yates, 910* So. 2d 401, 404 (Fla.4th DCA 2005). The foreclosure action sought to collect the debt through the liquidation of Plaintiffs' home. The negligence claim is substantively the same as a claim brought under a consumer protection statute. Importantly, the foreclosure was litigated in a trial court within the Fourth District's territorial jurisdiction. Thus, *Equity Residential Properties* is fatal to Wells Fargo's attempt to characterize Plaintiffs' claim as a compulsory counter-claim in the state court foreclosure.

### III. THE FOURTH DISTRICT'S DECISION IN THE FORECLOSURE APPEAL CONCLUSIVELY ESTABLISHES THAT WELLS FARGO VIOLATED RESPA

On March 10th, 2014, Plaintiffs sent Wells Fargo a "Qualified Written Request/Notice of Error" (D.E. 21-2), explaining that "… the foreclosure action was improperly filed because Mr.

and Mrs. Reano had made sufficient payments to [Wells Fargo] by March 8th, 2010, *before* the action was filed." (D.E. 21-2, p.2). Wells Fargo responded to Plaintiffs' RESPA correspondence, but refused to make any corrections. Ultimately, the Fourth District held that, having received this payment before the foreclosure was filed, the mortgagee had no right to file the foreclosure lawsuit. *Reano,* 191 So.3d at 961.

Wells Fargo now makes the brazen argument that the Court should nevertheless dismiss Plaintiffs' RESPA claim with prejudice. Wells Fargo's position is untenable. When a mortgage servicer receives a Notice of Error, it must either correct the error or conduct a reasonable investigation and explain why it believes no error occurred. *See E.g Renfroe v. Nationstar Mortg., LLC,* 822 F.3d 1241, 1244 (11th Cir. 2016) citing 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.35(e)(1)(i). It is true that a servicer can avoid RESPA liability even where there is an error if it conducts a reasonable investigation and nevertheless fails to discover the error. However, that is not what happened here. The Fourth District's holding establishes pursuant to the doctrines of res judicata, collateral estoppel, and law of the case, that an error occurred. Wells Fargo was fully aware of the underlying facts, but nevertheless refused to correct the error. RESPA's requirement that mortgage servicers must correct errors would be completely meaningless if the servicer could avoid liability by simply insisting that there is no error, when there indisputably was. As the 11th Circuit stated in *Renfroe*:

> … a servicer notified of an account error could always avoid RESPA liability just by claiming it thought there was no error and correcting the error going forward. According to Nationstar, a RESPA cause of action would not accrue in this situation—despite the abusiveness of the tactic. We reject such a cramped reading of RESPA.

*Id.* at 1246.

Wells Fargo's argument is even more absurd here than in *Renfroe* because Wells Fargo never corrected the error. The only reason why Plaintiffs did not lose their home is because the Fourth District reversed the foreclosure judgment over Wells Fargo's strenuous objection. Reduced to its simplest terms, Wells Fargo asks the Court to ignore the provisions of RESPA requiring mortgage servicers to correct servicing errors. The Court must decline this invitation.

Wells Fargo also cites *Berene v. Nationstar Mortg. LLC*, No. CV 14-61153-CIV, 2016 WL 3944742, at *3, where this Court found that the *Rooker-Feldman* doctrine presented a jurisdictional bar to a RESPA claim where the servicing error was the subject of a foreclosure judgment. *Berene* was decided on jurisdictional grounds and does not conclude that the existence of the judgment excused the servicer from complying with RESPA. It is far from clear why Wells Fargo believes the jurisdictional analysis in *Berene* supports dismissal on the merits here. Nevertheless, *Berene* was recently reversed by the 11th Circuit on appeal. *Berene v. Nationstar Mortg. LLC,* No. 16-13939, 2017 WL 1420809, at *1 (11th Cir. Apr. 20, 2017).

Lastly, Wells Fargo argues that Plaintiffs damages flow from the wrongfully obtained foreclosure judgement, not the RESPA violation. (D.E. 95, p.13). But as this Court explained in *Burdick v. Bank of Am., N.A.,* 99 F. Supp. 3d 1372, 1380 (S.D. Fla. 2015):

> Defendant contends that Plaintiff's alleged damages are "not related to, or connected to [the servicer's] response to Plaintiff's QWR," and that they instead relate to the prior foreclosure action on Plaintiff's home. […] But the two are not mutually exclusive. Defendant's RESPA violation could plausibly have exacerbated the foreclosure proceedings and led Plaintiff to suffer additional harm that he would not have experienced absent the violation. Such a plausible allegation is all that is required to survive a motion to dismiss.

There can be no doubt that Wells Fargo's RESPA violation severely exacerbated the foreclosure proceedings in this case, ultimately resulting in a prolonged appeal, and frivolous post-appeal

9

maneuvering by Wells Fargo where it unsuccessfully attempted to persuade the state trial court to disregard the appellate court's mandate.

### IV. WELLS FARGO FAILS TO IDENTIFY ANY BASIS TO DISMISS THE CONVERSION CLAIM

Although Plaintiffs have not included a conversion claim in their proposed Second Amended Complaint, Wells Fargo's argument for dismissal is meritless. Wells Fargo argues that Plaintiffs "voluntarily made their payments …" to Wells Fargo. (D.E. 95, p.14). While that is true, it is irrelevant. Plaintiffs made those payments to Wells Fargo to be forwarded to the mortgagee and applied to their mortgage account—not to be held in a suspense account where the funds were used to earn income for Wells Fargo. As *Masvidal v. Ochoa,* 505 So. 2d 555, 556 (Fla. 3d DCA 1987) illustrates, conversion will lie where "… the defendant lawfully obtained possession of the plaintiff's funds to set up the escrow fund and thereafter converted the funds for his own use." That is exactly what Wells Fargo did here.

Wells Fargo next contends that Plaintiffs did not demand the return of the funds. (D.E. 94, p.14). However, under Florida law, "[t]he generally accepted rule is that demand and refusal are unnecessary where the act complained of amounts to a conversion regardless of whether a demand is made." *Columbia Bank v. Turbeville*, 143 So. 3d 964, 969 (Fla. 1st DCA 2014) citing *Mayo v. Allen,* 973 So.2d 1257, 1259 (Fla. 1st DCA 2008) (quoting *Goodrich v. Malowney,* 157 So.2d 829, 832 (Fla. 2d DCA 1963)).

Wells Fargo then stubbornly insists that it "was authorized under the Mortgage to hold Plaintiffs' insufficient payment in a suspense account." Regardless of how many times Wells Fargo recites these self-serving conclusions, it simply cannot overcome the fact that the Fourth District held that Plaintiffs payments *were* sufficient and that Wells Fargo was required to apply them to the mortgage. Lastly, Wells Fargo insists that like Plaintiffs' negligence claim, the

conversion claim was a compulsory counter-claim. But this argument falls apart under its own fundamentally flawed logic. Wells Fargo was not a party to the foreclosure litigation. By definition, if it had forwarded the payments to the foreclosure plaintiff, the funds would not have been placed in a suspense account and there would have been no conversion.

### V. ALTHOUGH WELLS FARGO'S CONTENTIONS CONCERNING PLAINTIFFS' DECLARATORY JUDGEMENT CLAIM ARE MERITLESS, THE CLAIM IS NEVERTHELESS MOOT IN LIGHT OF THE FOURTH DISTRICT'S HOLDING

Wells Fargo first argues that "declaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own." (D.E. 95, p. 16), but Florida's declaratory judgment statute expressly provides "[t]his chapter is declared to be substantive and remedial. Its purpose is to settle and to afford relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations and is to be liberally administered and construed." Fla. Stat. § 86.101. Contrary to Wells Fargo's contention then, the Florida legislature has expressly authorized a cause of action for declaratory relief.

Wells Fargo then asks the Court to accept its factual representations that it credited the March 2010 payment in June of 2014, as well as "approximately" 28 additional payments. (D.E. 95, p.16-17). These procedurally improper and highly disputed factual representations are no basis for dismissal. Nevertheless, Plaintiffs do agree that these claims are moot. The Fourth District has now conclusively adjudicated the parties' rights with respect to the March 2010 payment. While it does appear that Wells Fargo continues to misapply these payments, Plaintiffs believe that this is appropriately litigated in the context of Plaintiffs new RESPA claim raised in their proposed Second Amended Complaint, and no longer seek to pursue any declaratory judgment claim.

11

## CONCLUSION

At bottom, Wells Fargo's motion to dismiss is nothing more than a collection of procedural improper factual representations mixed with inapposite legal argument and a direct request that the Court ignore the plain language of RESPA and the Fourth District's holding in the related appeal. Wells Fargo's motion should be denied in its entirety.

Respectfully Submitted,

**THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.**

1999 N. UNIVERSITY DRIVE
CORAL SPRINGS, FL 33071
Phone:  (954) 942-5270
Fax:     (954) 942-5272
E-mail:  jgolant@jeffreygolantlaw.com
By: **/S/ JEFFREY N. GOLANT, ESQ.**
Fla. Bar. No. 0707732
Co-Counsel for Plaintiffs Carmen and Santiago Reano

**LEGAL AID SERVICE OF BROWARD COUNTY, Inc**.
491 N. State Road 7
Plantation, FL 33317
**Jennifer T. Harley, ESQ.**
Phone:  (954)736-2488
E-mail:  jharley@legalaid.org
Fla. Bar No. 962821
Co-Counsel for Plaintiffs Carmen and Santiago Reano

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed using CM/ECF on May 15th, 2017 and served via Notice of Electronic Filing generated by CM/ECF upon the counsel of record identified below:

Michael K. Winston, Esquire
E-mail: mwinston@cfjblaw.com
Kristin A. Gore, Esquire
E-mail: kgore@cfjblaw.com
CARLTON FIELDS JORDEN BURT, P.A.
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, FL 33401-6149
Telephone: (561) 659-7070
Facsimile:  (561) 659-7368

**/S/ Jeffrey Golant**